**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
FERMIN GONZALEZ, et al.,

                        Plaintiffs,

        - against -

EL ACAJUTLA RESTAURANT INC., et al.,
                        Defendants.
------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 04-1513 (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

Plaintiffs Fermin Gonzalez ("Gonzalez"), William Ochoa ("Ochoa"), and Maria Orbelicia Melgar ("Melgar") accuse defendants Freddy and Rosa Bonilla (the "Bonillas") and several commercial entities with which they are associated – specifically, El Acajutla Restaurant Inc. (the "Restaurant"), El Campesino Deli-Grocery, Inc. (the "Deli"), and Caleb's Coin Laundromat (the "Laundromat") – of violating of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (the "FLSA") and the corresponding New York State laws, as well as Section 1985 of Title 42, United States Code ("Section 1985"). The plaintiffs allege that they were denied minimum wages and appropriate overtime payments, that they were subjected to retaliation for protesting against such treatment, and that the defendants conspired to violate their civil rights. With the parties' consent, the case was referred to me for all purposes pursuant to 28 U.S.C. § 636(c)(1).

The defendants now seek partial summary judgment in their favor on all of the plaintiffs' federal law claims, and further argue – although they have not formally sought such relief in their notice of motion – that I should decline to exercise supplemental jurisdiction over the remaining law claims. For the reasons set forth below, I grant the motion for summary judgment as to Ochoa's FLSA claims as well as the state and federal retaliation claims raised by Gonzalez and Ochoa; in all other respects I deny the defendants' requests for relief.

I.      Background

The plaintiffs commenced this action on April 13, 2004. *See* Docket Entry ("DE") 1.[1]

The defendants moved for dismissal on November 16, 2004, DE 16, and the plaintiffs

subsequently filed a response in opposition and a cross-motion seeking permission to amend

their complaint.  DE 17; DE 19.  On March 25, 2005, the Honorable Leonard Wexler, United

States District Judge (to whom the case was then assigned), denied the defendants' motion to

dismiss and granted the plaintiffs' motion to amend their complaint.  DE 24.  The plaintiffs filed

a Second Amended Complaint – the pleading now before the court – on May 6, 2005, and the

defendants filed an answer, along with a counterclaim against plaintiff Ochoa, on June 15, 2005.

*See* DE 28 ("Complaint"); DE 34 (Answer and Counterclaim).

Following the resolution of a number of discovery disputes, the parties consented to have

the case referred to a magistrate judge for all purposes including the entry of judgment, and Judge

Wexler referred it to me.  DE 61.  With the parties' consent and input as to deadlines, I ordered

the following briefing schedule for the motion now before me:

> Defendants shall serve their motion for summary judgment on plaintiffs by March
> 13, 2006.  Plaintiffs shall serve their opposition papers on defendants by March
> 27, 2006.  Defendants shall serve their reply papers on plaintiffs by April 3, 2006.
> Defendants shall then file all papers with the court electronically ... on April 3,
> 2006.

Order dated February 21, 2006.  The parties, however, did not follow my instructions, and on

April 2, 2006, the defendants filed only their motion for summary judgment on the docket.  *See*

---

[1]  Two additional plaintiffs named in the Second Amended Complaint subsequently filed
stipulations of dismissal and are no longer parties to this case.  DE 44 (Stipulation of Dismissal
as to plaintiff Narcisco Ramos); DE 56 (Stipulation of Dismissal as to plaintiff Juan Fuentes).  In
addition, the original complaint incorrectly refers to plaintiff Melgar as "Orbelicia Escobar," an
error corrected in the caption of the Second Amended Complaint.

DE 66 (consisting of the defendants' Notice of Motion ("Notice"); the Affirmation of Attorney

Delvis Meléndez; and a Memorandum of Law ("DM")).[2]

The plaintiffs filed no timely response to the motion.  In early January of 2007, my law

clerk, unable to find any response to the motion, telephoned the plaintiffs' counsel looking for a

copy.  Counsel assured him that a response had been filed and would submit a copy.  Over the

next several days, that story changed:  first to an assertion that the response, although written,

may not have been filed by the junior attorney who had been assigned the task (and who had left

the office of plaintiffs' counsel in October 2006); and then to an assertion that the response had

never actually been written but that counsel would soon file a letter reconstructing what the

departed attorney had been expected to write and file.  Some (but not all) of the plaintiffs'

counsel's evolving story is set forth in a letter he submitted, after several unproductive telephone

calls from my chambers to his office, on January 12, 2007.  DE 67.  Because the plaintiffs'

response was so long overdue, and because the plaintiffs' attorney had done nothing for many

months to assure that his clients' interests were protected, but had instead taken belated and

insufficient steps in that regard only after significant prompting from me, I entered an order

advising that I would resolve the motion for summary judgment solely on the basis of the

defendants' submissions.  Order dated January 12, 2007.  Counsel for the plaintiffs filed a letter

---

[2]  In addition to filing the motion on the electronic docket, the defendants' counsel also submitted
a courtesy hard copy to chambers.  The latter included eleven poorly organized exhibits,
designated "A" through "K," at least some of which are of uncertain provenance, and none of
which is properly before the court.  That lapse is a sufficient reason to decline to rely on any of
the exhibits and to reject any argument that relies on them.  Nevertheless, to attempt to resolve
the matter on the merits, I will assume the exhibits are properly before the court and will refer to
them as if they actually had been submitted as exhibits to the defendants' memorandum of law.
For purposes of maintaining a clear record, however, I direct the defendants' counsel to file
copies of the exhibits, with a sponsoring affidavit, no later than March 27, 2007.

motion for reconsideration of the latter order that included, as an attachment, a three-page letter-brief that counsel wished me to consider in opposition to the motion for summary judgment. DE 68. Because the motion for reconsideration was supported by no showing that would warrant such relief, I denied it. Order dated January 18, 2007. I therefore proceed to consider the defendants' motion solely on the basis of the defendants' submissions in support of it.

II.     Discussion

    A.     The Applicable Law

        1.     The Standard For Granting Summary Judgment

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In determining whether to grant summary judgment, a court is confined to issue-finding, not issue resolution. *Rasmussen v. Sigma Corp. of Am.*, 27 F. Supp.2d 388, 391 (E.D.N.Y. 1998) (citations omitted). The court does not "weigh the evidence and resolve ... factual issues" but rather "determine[s] as a threshold matter whether there are genuine unresolved issues of material fact to be tried." *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir. 1991) (quoting *Gibson v. Am. Broadcasting Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989)); *see also* Fed. R. Civ. P. 56(c). A fact is material if it "'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue is presented if "'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" *Id.* In assessing the

4

evidence, "[a]ll factual inferences are to be resolved in favor of the non-movant." *Transco*

*Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed. Cir. 1994).

2. <u>Procedural Requirements:  Local Civil Rule 56.1</u>

Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern

Districts of New York provides as follows:

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules
> of Civil Procedure, there shall be annexed to the notice of motion a separate, short
> and concise statement, in numbered paragraphs, of the material facts as to which
> the moving party contends there is no genuine issue to be tried. *Failure to submit*
> *such a statement may constitute grounds for denial of the motion.*

Loc. Civ. R. 56.1(a) (emphasis added).  As the plain language of the rule makes clear, a movant's

failure to file a Rule 56.1 statement alone constitutes a sufficient ground for denying the motion

in its entirety. *See, e.g.*, *Martinez v. Headley*, 2001 WL 483448, at *1 (E.D.N.Y. Jan. 18, 2001)

(denying without prejudice to renewal defendant's motion for summary judgment for failure to

comply with Local Civil Rule 56.1) (citing *Grant v. City of New York*, 1992 WL 77562, at *4

(S.D.N.Y. Mar. 25, 1992); *Gear, Inc. v. L.A. Gear California, Inc.*, 637 F. Supp. 1323, 1333

(S.D.N.Y. 1986)).

The defendants have not submitted a Rule 56.1 statement in support of their motion.

While that lapse would permit me to deny relief on that basis alone, it does not compel me to do

so:  "A district court has broad discretion to determine whether to overlook a failure to comply

with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations

omitted).  I exercise my discretion in this instance to address the motion on the merits. *See, e.g.*,

*Ostroski v. Town of Southold*, 443 F. Supp.2d 325, 332-33 (E.D.N.Y. 2006) (declining to deny

the defendants' summary judgment motion based on the absence of a Rule 56.1 statement

5

because "the relevant facts were readily apparent" from the defendants' memorandum of law) (citing *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 155 n.2 (2d Cir. 2003)).

The absence of any timely response from the plaintiffs does not create a corresponding basis for the exercise of discretion. To be sure, the local rules of this court generally provide that a party's willful failure to comply with the requirement of submitting a memorandum of law in opposition to a motion "may be deemed sufficient cause for ... the granting of [the] motion by default." Loc. Civ. R. 7.1. That local rule, however, does not trump the Federal Rules of Civil Procedure, and therefore has no application where a plaintiff fails to submit a memorandum of law in opposition to a motion for summary judgment. That circumstance is governed by a rule that allows the entry of summary judgment only "if appropriate[.]" Fed. R. Civ. P. 56(e); *see Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("where the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial") (citing *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)) (internal quotation marks omitted); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001) (in deciding a summary judgment motion, a court may "in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file" a Rule 56.1 statement) (internal quotation marks omitted); *David v. Comtech PST Corp.*, 2006 WL 2713936, *12 (E.D.N.Y. Sept. 22, 2006) (if the court is aware of a basis for determining that the record would permit a material finding of fact in the non-moving party's favor, the law does not require the court to ignore it simply because the non-moving party has not been the one to identify it).

I therefore proceed to examine the substance of the defendants' arguments in favor of summary judgment on the plaintiffs' various claims. As explained below, most of the defendants' legal arguments are fatally flawed, while others rest improperly, if tacitly, on the assumption that disputed facts will be resolved in the defendants' favor.

B.      The FLSA Claims

The defendants argue that they are entitled to summary judgment as to the plaintiffs' minimum wage, overtime, and retaliation claims under the FLSA for two reasons. First, they argue that the claims are time-barred. Second, they contend that the FLSA does not govern the business for which the plaintiffs worked. DM at 8-17. As explained below, I find that plaintiff Ochoa's FLSA claim is time-barred but that the parallel claims of the other plaintiffs are not. I also find that there exist genuine disputes about facts that are material to a determination of whether the FLSA applies in the circumstances of this case.

1.      The Statute Of Limitations

An employee covered by the FLSA must raise a claim within two years of an employer's non-willful violation of the FLSA, or within three years of a willful violation. *See* 29 U.S.C. § 255(a). An FLSA violation is deemed willful if an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see also Harold Levinson Assocs., Inc. v. Chao*, 37 Fed. Appx. 19, 22 (2d Cir. 2002) (citing *Herman v. RSR Sec. Svcs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999)). Here, the plaintiffs allege that the defendants willfully violated the FLSA's wage, overtime, and retaliation provisions, and that the three-year statute of limitations therefore applies. Complaint ¶¶ 96, 102, 106. For purposes of this motion, I assume that the conduct of

7

which the plaintiffs complain was willful and that the three-year limitations period therefore

applies.

Although all three plaintiffs initiated this lawsuit at the same time, that fact does not

mean that all three stand or fall together against the defendants' assertion that the FLSA claims

are untimely. That is so because of the unique nature of a collective action under the FLSA.

Such a lawsuit is not like a class action under Federal Rule of Civil Procedure 23, in which all

potential plaintiffs are included as class members unless they take affirmative steps to "opt out."

*Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir. 2004); *El v. Potter*, 2004 WL 2793166, *8

(S.D.N.Y. Dec. 6, 2004) (citing *Cahill v. City of New Brunswick*, 99 F. Supp.2d 464, 478 (D.N.J.

2000)). Instead, a potential member of an FLSA collective action must expressly "opt in" to the

suit by filing a written consent to join the action. 29 U.S.C. § 216(b); *see Patton v. Thompson

Corp.*, 364 F. Supp.2d 263, 266 (E.D.N.Y. 2005). An employee who fails to "opt in" to a fellow

employee's FLSA collective action is thus not bound by the outcome of the litigation. *El v.

Potter*, 2004 WL 2793166, at *8 (citing *Cahill v. City of New Brunswick*, 99 F. Supp.2d 464, 478

(D.N.J. 2000)). Further – and of particular relevance here – an employee who does decide to join

an FLSA lawsuit cannot rely upon the filing of the complaint to toll the applicable statute of

limitations. Instead, an FLSA collective action suit begins for an individual plaintiff:

> (a) on the date when the complaint is filed, if he is specifically named as a party
> plaintiff in the complaint *and* his written consent to become a party plaintiff is
> filed on such date in the court in which the action is brought; *or*

> (b) if such written consent was *not* so filed or if his name did not so appear – on
> the subsequent date on which such written consent is filed in the court in which
> the action was commenced.

29 U.S.C. § 256 (emphasis added).

The case law, like the statute itself, requires named plaintiffs as well as others to submit a written consent to join in a collective action under the FLSA, and is not satisfied by the filing of the complaint itself. *See El v. Potter*, 2004 WL 2793166, at *8 ("all plaintiffs, *including named plaintiffs*, must file written consents in order to begin their [FLSA collective action] lawsuits ... a suit does not begin until a consent has been filed.") (emphasis added); *see also Robinson-Smith v. Gov't Employees Ins. Co.*, 424 F. Supp.2d 117, 123 (D.D.C. 2006) (citing *Harkins v. Riverboat Svcs. Inc.*, 385 F.3d 1099 (7th Cir. 2004)).

To the extent that the applicable rule is counter-intuitive – in that it assumes that a plaintiff who files a complaint in his own name does not actually intend to join in his own lawsuit unless he files an additional document saying, in effect, "and I mean it" – it creates a trap for the unwary that runs counter to the statute's remedial goal. In the usual case, in which the plaintiff is represented by counsel who is familiar with the statute and its requirements and who would normally make sure that each named plaintiff's written consent is filed simultaneously with the complaint, that trap should not close.

Not so here. None of the named plaintiffs filed a written consent to join the lawsuit when it was initially filed. The first person to file such a written consent was one Hector Alpirez ("Alpirez"), who consented to join the action as a plaintiff on November 14, 2005. DE 53. Named plaintiffs Gonzalez and Melgar both filed their written consent forms, and thereby tolled the statute of limitations, on March 27, 2006 – almost two full years after the inception of this lawsuit. DE 64; DE 65. Named plaintiff Ochoa has *never* filed such a consent, not even in the many months since the defendants first raised that lapse as a basis for denying him relief.

As a result of these piecemeal filings, different plaintiffs may seek relief for different periods: Alpirez may seek damages for FLSA violations occurring after November 14, 2002 (assuming he can show willfulness), Gonzalez and Melgar for violations occurring after March 27, 2003, and Ochoa – even assuming he were to file a written consent today – could seek relief only for violations occurring after March 20, 2004. Whether Alpirez, Gonzalez, and Melgar can demonstrate such violations in the relevant period is an issue of fact that must be determined at trial. *See* Complaint ¶¶ 40, 72 (alleging that Gonzalez's employment terminated in "January 2004" and Melgar's on May 26, 2004). Ochoa, however, is plainly time-barred: the complaint alleges that his employment with the defendants ended "about November 2001." *Id*. ¶ 64. It therefore appears that Ochoa cannot prove any fact that would entitle him to recover under the FLSA, and that the defendants are entitled to summary judgment in their favor on his claims in that regard.

### 2. Enterprise Liability

An employee falls within the ambit of the FLSA's wage, overtime, and retaliation protections if either of two conditions exist: (1) if the employee individually was "engaged in commerce or in the production of goods for commerce," or (2) the employer was an "enterprise engaged in commerce or in the production of goods for commerce," regardless of whether the individual employee was so engaged. 29 U.S.C. §§ 203(s)(1)(A), 207(a)(1); *see Bowrin v. Catholic Guardian Soc.*, 417 F. Supp.2d 449, 457-58 (S.D.N.Y. 2006); *Xelo v. Mavros*, 2005 WL 2385724, at *2 (E.D.N.Y. Sept. 28, 2005). The plaintiffs contend that the defendants together

comprised an "enterprise engaged in commerce" within the meaning of the statute.[3]  The

defendants contend that they do not, singly or together, constitute any "enterprise engaged in

commerce" and that the plaintiffs' claims under the FLSA must therefore be dismissed on

summary judgment.  As explained below, I find that a resolution of the question requires the

determination of disputed issues of material fact, and that the defendants' motion for summary

judgment on the remaining FLSA claims must therefore be denied.

The defendants' legal theory implicates two separate statutory terms:  "enterprise" and

"engaged in commerce."  The FLSA defines the former term, in pertinent part, as follows:

> "Enterprise" means the related activities performed (either through unified
> operation or common control) by any person or persons for a common business
> purpose, and includes all such activities whether performed in one or more
> establishments or by one or more corporate or other organizational units including
> departments of an establishment operated through leasing arrangements, but shall
> not include the related activities performed for such enterprise by an independent
> contractor.

29 U.S.C.A. § 203(r)(1).  To be "engaged in commerce," an enterprise must involve "employees

handling, selling, or otherwise working on goods or materials that have been moved in or

produced for commerce by any person" and an "annual gross volume of sales made or business

done" in the amount of $500,000 or more.  29 U.S.C. § 203(s)(1)(A)(i)-(ii).

The defendants argue that the FLSA does not apply in this case for several reasons.  First,

the argue that their businesses – the Restaurant, the Deli, and the Laundromat – are not related or

interconnected.  Second, they claim that neither the businesses nor their respective employees are

---

[3]  They also appear to invoke the portion of the statute that protects employees who are
individually "engaged in commerce or in the production of goods for commerce" – a theory that
the defendants' motion does not address.  That alone is sufficient reason to deny summary
judgment.

engaged in interstate commerce. Third, they deny that the annual gross volume of sales from any one of the three businesses (or even all of them together) rises to the $500,000 minimum required to trigger the FLSA's protections. DM at 8-14. As proof of their various contentions, the defendants rely on the affidavit of defendant Freddy Bonilla and various corporate financial documents for the Restaurant. *Id*. at 12; *id*. Ex. A (corporate tax returns for the Restaurant for 2002-2004); *id*. Ex. D (Affidavit of Freddy Bonilla ("F. Bonilla Aff.")) (stating that the defendants' businesses have never individually or collectively grossed $500,000 for a single year); *id.* Ex. G (certificate of incorporation for the Restaurant).

It is the law of this case that the plaintiffs have sufficiently alleged otherwise. *See* DE 24 (Memorandum and Order denying motion to dismiss) at 3 (holding that the Complaint "sufficiently alleges the jurisdictional amount at issue"). And while the plaintiffs have failed to respond to the instant motion, and therefore cannot point to any facts in the record that refute the defendants' evidence on this score, I find that the latter evidence, even if assumed to be true, does not defeat the particular claims that the plaintiffs have made under the FLSA. First, the plaintiffs allege that defendants ran the Restaurant, the Deli, and the Laundromat as a single enterprise for purposes of the statute. Complaint ¶¶ 32-34. In particular, they allege that the defendant businesses used the named plaintiffs and other class members "in a fungible and interchangeable manner of workers," *id*. ¶ 28, that certain employees were directed to perform work for more than one of the businesses, and that the three businesses' finances were commingled. *Id*. ¶¶ 48, 65, 71. Freddy Bonilla's conclusory assertion that "[a]ll three companies are separate[,]" F. Bonilla Aff. ¶ 4, is not sufficient to overcome those allegations on a motion for summary judgment. I also note that it is not echoed in any of the excerpts from Mr. Bonilla's deposition that his counsel has

included in support of the motion for summary judgment.  Similarly, the evidence that one of the

three defendant businesses reported income far below the statutory threshold, *see* DM at 8 & Ex.

A, does not sufficiently refute the complaint's allegations that the three businesses operated

together as a single enterprise and that the Restaurant in particular significantly understated its

income on its tax returns.  *See* Complaint ¶ 26 (alleging that defendants reported only one-third

of the Restaurant's income in their tax returns).

The closest call is whether Mr. Bonilla's allegation that "I have never grossed $500,000

per year at any or [sic] the locations either individually or collectively," F. Bonilla Aff. ¶ 5,

sufficiently overcomes the complaint's allegations to warrant summary judgment.  The allegation

is sufficiently self-serving and conclusory (particularly in light of the defendants' selective

reliance on tax returns) that the answer would probably be "no" even if the affidavit had no

technical shortcomings.  But viewing the affidavit as it has actually been presented to me, rather

than as it might have been, makes it far easier to reject it as a basis for dispositive relief.  First,

and perhaps most important, the affidavit does not actually state that the three businesses named

as defendants did not have a combined annual gross volume of sales made or business done of at

least $500,000.  Rather, Mr. Bonilla uses the pronoun "I" to say that he personally has not

grossed that amount from the three businesses.  He may well have meant to convey an assertion

that would be relevant to (and dispositive of) the instant inquiry, but that is not precisely what he

said.  In addition, the defendants have not cited the affidavit as part of a statement pursuant to

Local Civil Rule 56.1, and indeed have not properly filed the affidavit at all.  Thus there is ample

reason, both substantive and procedural, to disregard Mr. Bonilla's statement as a basis for granting summary judgment.[4]

D.    The Section 1985 Claim

In his claim arising under Section 1985, plaintiff Gonzalez alleges that he was verbally and physically threatened by defendant Freddy Bonilla's brother Rene Bonilla as retaliation for having filed the original complaint. Complaint ¶¶ 51-56, 128-33; *see also* DM Ex. C ¶ 35 (Affidavit of Fermin Gonzalez). The defendants ask me to dismiss that claim on the ground that the evidence cannot support it. In particular, they assert that Gonzalez will be unable to prove that Freddy Bonilla conspired with his brother Rene Bonilla to violate Gonzalez's civil rights "due to the fact that on the date of the alleged incident Freddy and Rene Bonilla had not been on speaking terms for over one year.... Thus, an agreement between the two to engage in unlawful activity could not have taken place." DM at 19 (citing F. Bonilla Aff.); *id*. Ex. E (Affidavit of Rene Bonilla ("R. Bonilla Aff.")). The argument is wholly unpersuasive.

As a threshold matter, the evidence on which the defendants rely, even if properly before me, would not support their argument. Freddy Bonilla' affidavit says nothing remotely related to the proposition for which it cited; indeed, it does not mention Rene Bonilla at all. Rene Bonilla's affidavit also fails to support the argument: while it says that the Bonilla brothers had "had a falling out and had not spoken in over one year[,]" R. Bonilla Aff. ¶ 3, it makes that allegation as of the time that Rene Bonilla learned of Gonzalez's plan to sue. The affidavit is silent as to any

---

[4]  At an even more picayune level, I note that although styled as an affidavit, the notary who witnessed the signing of the document – who also serves as Mr. Bonilla's counsel – apparently did not bother to ensure that the statement was made under oath. Instead, she merely attests that the statement was "Signed to before me on 28th day of July 2004 [sic.]" F. Bonilla Aff. at 2.

communications between the Bonilla brothers after that time, and therefore does not preclude the

possibility that the two thereafter conspired to retaliate against Gonzalez.  The fact that Gonzalez

acknowledges that Freddy Bonilla was not physically present when he claims to have been

accosted by Rene Bonilla, DM Ex. K (reprinting Deposition of Fermin Gonzalez at 146),

likewise does nothing to invalidate his claim.

More fundamentally, the evidence on which the defendants rely presents only one side of

a factual dispute.  As the defendants' own submissions demonstrate, Gonzalez swears that Rene

Bonilla said to him, "You are suing my brother, son of a bitch.  We're going to join forces so we

can deport you.  And I'm going to give you a couple of beatings, you son of a bitch."  DM Ex. C

(affidavit of Fermin Gonzalez) ¶ 35.  The record creates a factual dispute that must be determined

by a jury.  I therefore deny the defendants' motion for summary judgment on the Section 1985

claims.

E.      The Retaliation Claims

The plaintiffs claim that the defendants unlawfully retaliated against them for filing the

instant lawsuit.  Complaint ¶¶ 119-27.  In particular, they claim that the defendants' actions

violated the relevant provisions of the FLSA and a similar law of New York State.  *See* 29 U.S.C.

§ 215(a)(3) (making it unlawful "to discharge or in any other manner discriminate against any

employee because such employee has filed any complaint ... under ... this chapter"); N.Y. Lab.

Law § 215(1) (making it unlawful for any "employer" to "discharge, penalize, or in any other

manner discriminate against any employee because such employee ... has caused to be instituted

a proceeding under ... this chapter").  The defendants seek summary judgment as to Gonzalez and

Melgar on these retaliation claims, on the ground that neither was subjected to any adverse

employment action (for reasons I cannot discern, the defendants have not requested summary judgment on Ochoa's retaliation claims, despite the availability against his claims of the same arguments they bring to bear against Gonzalez). DM at 20-25. For the reasons explained below, I grant this prong of the motion as to Gonzalez, deny it as to Melgar, and *sua sponte* grant summary judgment on Ochoa's retaliation claims.

### 1. Gonzalez

The parties are in agreement that Gonzalez had ceased working for any of the defendant businesses no later than January 2004. This lawsuit was filed on April 13, 2004. DE 1. That filing is the only "protected activity" that any plaintiff describes as the cause of the defendants' allegedly retaliatory conduct. *See* Complaint ¶¶ 120, 125. Accordingly, because Gonzalez's employment had ended before he engaged in the protected activity, there was no adverse employment action that followed (much less that was caused by) his engagement in protected activity. He therefore cannot succeed on his retaliation claims under the FLSA and New York State law. *See Ayres v. 127 Rest. Corp.*, 12 F. Supp.2d 305, 311 (S.D.N.Y. 1998) (summary judgment entered against plaintiffs because they voluntarily terminated their employment before filing their lawsuit) (citing *Marshall v. Canada Dry Bottling Co.*, 593 F.2d 712 (6th Cir. 1979)).

### 2. Melgar

Melgar alleges that after the commencement of the suit, while still employed by the defendants, she was threatened and constructively discharged. Complaint ¶ 77-80. Specifically, Melgar claims that "[d]efendant Rosa Lillian Bonilla told me that I would get into big trouble for my participation in this lawsuit against her and the other [d]efendants. She threatened me by saying that she would report me to the immigration authorities and would have me deported. She

also warned me that I could lose my house because I worked in this country and did not file income taxes." DM Ex. J ¶ 7 (Affidavit of Maria Orbelicia Melgar ("Melgar Aff.")). As a result of the alleged threats, Melgar claims she was constructively terminated in violation of the FLSA and New York law. Complaint ¶ 120-22, 124-27.

The defendants argue that Melgar has not raised a triable issue of material fact as to her constructive discharge claim because she has not produced any evidence of an adverse employment action. DM at 23-24. In support of this argument the defendants rely primarily on Melgar's deposition testimony:

> Q:      When did you decide that you weren't going to work [for the
>         defendants] anymore?
>
> A:      May of 2004.
>
> Q:      Do you remember what day you decided?
>
> A:      On my day of rest. That is the day before Mr. Freddy – pardon me.
>
> Q:      Go ahead.
>
> A:      He spoke with me. He told me how was it possible [sic] that I
>         could be suing and continue working with him.
>
> Q:      What happened?
>
> A:      Then I decided not to go anymore.
>
> Q:      [Defendant Freddy Bonilla] didn't fire you?
>
> A:      No, he didn't fire me. It's just that I didn't arrive.
>
> Q:      Why?
>
> A:      Because neither he nor I, neither of us, would feel well.

DM Ex. K at 93-94 (Deposition of Maria Orbelicia Melgar). While it is of course possible that Melgar's testimony in this regard will persuade a fact-finding jury that the defendants did not unlawfully retaliate against her, it does not suffice to overcome the allegations made in her affidavit and in the Second Amended Complaint that she was threatened and constructively terminated as a result of filing the instant lawsuit. I find that Melgar's allegations raise a triable issue of fact and serve to overcome the defendants' motion for summary judgment.

        3.     Ochoa

The defendants have sought no relief with respect to Ochoa's retaliation claims. It is clear, however, that his retaliation claims suffer from the same defect as those brought by Gonzalez. Specifically, there is no dispute that Ochoa's employment with the defendants ended years before this lawsuit was filed. *See* Complaint ¶ 64 (alleging that Ochoa "worked as an employee for Defendants ... until about November 2001"). A jury may find that the defendants violated Ochoa's rights in other ways, but the record would not permit a finding of retaliation against Ochoa for having filed this lawsuit.

        F.     Supplemental Jurisdiction

In light of the fact that I deny the motion for summary judgment as to some of the federal claims in this case, the defendants' request that I decline to exercise supplemental jurisdiction over the remaining state claims is moot. In any event, I believe it would be best to bring these claims to trial now rather than to shunt them off to another forum.

III.    Conclusion

For the reasons set forth above, I grant the defendants' motion for summary judgment as to plaintiff Ochoa's FLSA claims and I also grant the motion as to the federal and state retaliation

claims raised by plaintiffs Gonzalez and Ochoa; in all other respects I deny the motion for

summary judgment and order the parties to proceed to trial on the remaining claims. Counsel for

both parties shall confer as to potential trial dates and the possibility of settlement and shall

thereafter appear before me to discuss both matters on April 18, 2007, at 2:00 p.m.[5]


   **SO ORDERED.**

Dated: Brooklyn, New York
       March 20, 2007

                                        /s/ James Orenstein
                                        JAMES ORENSTEIN
                                        U.S. Magistrate Judge

---

[5] For the reasons explained above, I did not consider the plaintiffs' belated submission on the
merits of the motion before reaching the resolution I now order. After making my determination
of the appropriate outcome solely on the strength of the defendants' submissions, in an abundance
of caution I considered the arguments in the plaintiffs' letter-brief. Having now done so, I can
assure the plaintiffs that the outcome of the instant motion would have been the same even if
their attorney had timely attended to his duties on their behalf. The only argument in the letter
that warrants any discussion is the citation to case law from other jurisdictions suggesting that a
retaliation claim under the FLSA can go forward even though the plaintiff was not employed by
the defendant at the time of the alleged conduct. In the cited cases, however, the defendant was
alleged to have retaliated by taking actions that had the potential to impair the plaintiff's
employment relationship with a subsequent employer. Even if such conduct is actionable under
the FLSA, that is no reason to think that retaliation having no effect on the plaintiff's employment
with *any* employer is likewise actionable. As that is all the plaintiffs allege here, I adhere to my
view that summary judgment is warranted on the retaliation claims asserted by Gonzalez and
Ochoa.